# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **SOPHIA L. THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:08-CV-1901-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

Plaintiff Sophia L. Thompson ("Ms. Thompson") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Ms. Thompson timely pursued and exhausted her administrative remedies available

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Thompson was a 36-year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ").  (Tr. 12).  She was in special education classes throughout high school and received a certificate of graduation rather than diploma.  (Tr. 51).  Her past work experiences include employment as a bottling line attendant, laundry worker, dining room attendant, fast food worker, and packer of books. (Tr. 52).

Ms. Thompson states she became disabled on April 30, 2004, and primarily complains that she suffers from carpal tunnel syndrome, migraine headaches, asthma, and depression.  (Tr. 46, 48, 50).  In addition to these particular impairments, Ms. Thompson also claims she is mentally retarded as defined under Listing 12.05C. (Tr. 47).  Her last period of employment qualifying as substantial gainful activity ended on April 30, 2004, which is the same date as the onset of her disability.  (Tr. 46).

Ms. Thompson protectively filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on March 2, 2006.  (Tr. 44).  Both claims were denied on April 17, 2006.  (*Id.*).  Ms. Thompson timely filed a request for a

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

hearing on May 5, 2006. (Tr. 44). The hearing before the ALJ was held on April 23, 2007. (*Id.*). The ALJ concluded Ms. Thompson was not disabled as defined by the Social Security Act and denied her application on August 18, 2007. (Tr. 44, 53).

Ms. Thompson failed to file a request for review with the Appeals Council until February 22, 2008. (Doc. 9 at 1). The untimely nature of Ms. Thompson's request for review was excused for "good cause" since the claimant did not receive a copy of the ALJ's decision until January 31, 2008. (*Id.*).

On September 22, 2008, the Appeals Council denied review, which resulted in the ALJ's decision being the final decision of the Commissioner. (Tr. 1). On October 8, 2008, Ms. Thompson filed her Complaint with this court asking for review of the ALJ's decision. (Doc. 1). This court has carefully considered the record, and for the reasons stated below, reverses Commissioner's denial of benefits and remands the case to the Commissioner with instructions that Ms. Thompson be awarded benefits.

## <u>STANDARD OF REVIEW</u>

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 19, 2009.

4

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

5

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Thompson had not engaged in substantial gainful activity since the alleged onset of her disability on April 30, 2004.  (Tr. 46).  Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).  Under step two, the ALJ concluded that "[t]he claimant has "severe" mental deficiency; asthma (controlled); migraines (controlled); and carpal tunnel syndrome in her left hand." (Tr. 46).   The ALJ found that Ms. Thompson's impairments were medically established and had more than a minimal effect upon Ms. Thompson's ability to engage in work-related activities.  (Tr. 46).  Accordingly, the ALJ concluded that Ms. Thompson satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Thompson did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 46).  While Ms. Thompson contended that she satisfied step three by meeting the criteria under Listing 12.05C, the ALJ found otherwise.  (Tr. 47-48).

While the ALJ found that the claimant's I.Q. test scores were properly administered by a qualified medical professional and the test scores were valid, he determined that "[e]ven considering her full scale I.Q. score of 65, she is not mentally

6

retarded as contemplated by Section 12.05C." (Tr. 47).  In reaching this conclusion, the ALJ attempted to evaluate whether Ms. Thompson's level of adaptive functioning had deficits of the level of severity to indicate mental retardation as contemplated by Listing 12.05's diagnostic definition.[4]   (Tr. 48).  More particularly, the ALJ considered evidence of the claimant's daily activities, prior work history, social skills, and ability to perform routine hygiene and found that, although Ms. Thompson had a valid I.Q. score between 60 and 70 that satisfied the first prong of 12.05C, she lacked the requisite level of severity for deficits in adaptive functioning referred to under  Listing 12.05's general definition. (Tr. 47-48).   Accordingly, the ALJ concluded Ms. Thompson did not have an impairments or combination of impairments that met or equaled a listing.  (Tr. 46-48).

Under step four and in reliance upon testimony from a vocation expert, the ALJ determined that Ms. Thompson did not suffer from impairments preventing her from performing her past relevant work. (Tr. 48, 52).  The ALJ evaluated Ms. Thompson's residual functional capacity in his step four evaluation, and the claimant was found to have the residual functional capacity to perform the exertional and nonexertional requirements of medium work.[5]  (Tr. 48). The ALJ listed Ms. Thompson's work

---

[4]   As discussed *infra* at 17-19, the ALJ committed error in his evaluation of the diagnostic requirement relating to Listing 12.05C.

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she

ability limitations to include:  (1) she can sit, stand, walk for six out of eight hours;

(3) she can never climb ladders, ropes, or scaffolds; (3) she cannot work around

dangerous machinery or at unprotected heights; (4) she should avoid work

environments with poor ventilation, extremes of heat and cold, excessive noise or

vibration, or extreme wetness and humidity; (5) no commercial driving; (6) she can

perform simple, routine, repetitive tasks and simple work related decisions with only

occasional interaction with supervisors, coworkers, and the public; and (7) she is

limited to frequent fine fingering and occasional use of the left upper extremity. (Tr.

50).

It was unnecessary for the ALJ to continue to step five of the sequential

analysis due to the ALJ's finding that Ms. Thompson was able to perform past

relevant work.  (Tr. 52).  Accordingly, the ALJ concluded Ms. Thompson was not

disabled as defined by the Social Security Act, at any time from April 30, 2004,

through August 18, 2007, the date of the ALJ's decision.  (Tr. 44, 52-53).

## ANALYSIS

In this appeal, Ms. Thompson contends that "the evidence demonstrates that

the combination of [her] physical and mental impairments meets the requirements of

listing 12.05C" (Doc. 9 at 3) and that "the ALJ committed an error of law by failing

---

can also do sedentary and light work."  20 C.F.R. § 416.967(c).

to properly apply" the listing.  (*Id.* at 4 (emphasis omitted)).  If this is true, the claimant would satisfy step three of the five step evaluation process and would be disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(iii).

## I.    The First Prong of Listing 12.05C

### A.    The I.Q. Requirement of Listing 12.05C

#### 1.    Ms. Thompson's full scale I.Q. score meets Listing 12.05C.

Listing 12.05C demands that the claimant have "'[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'"  *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1287 (N.D. Ala. 2007) (citing *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993) (quoting Listing 12.05C)).  The I.Q. requirement of Listing 12.05C is determined by looking at the lowest score derived from the valid I.Q. test. *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (indicating that reliance upon lowest I.Q. score is appropriate when evaluating I.Q. requirement under Listing 12.05) (citations omitted); 20 C.F.R. Part 404, Subpt. P, App. 1, §12.00D.

Ms. Thompson's I.Q. testing was administered by Dr. James E. Crowder ("Dr. Crowder") and determined by using the Wechsler Adult Intelligence Scale 3rd Edition ("WAIS").  (Tr. 51, 196-99).  The test results showed Ms. Thompson has a verbal I.Q. of 66, performance I.Q. of 77, and full scale I.Q. of 65. (Tr. 198).  The

claimant's lowest score is the full scale I.Q. of 65, which is within the required range under Listing 12.05C.  (Tr. 47).  *See, e.g., Popp*, 779 F.2d at 1499 ("In addition, [the listing] provides that, where more than one IQ level is derived from the testing, *e.g.*, verbal, performance and full IQ's from WAIS testing, the lowest of these should be used in conjunction with 12.05.").

## 2.   The ALJ does not dispute the validity of Ms. Thompson's I.Q. testing results.

The standards for determining whether an I.Q. test is valid are stated in the introductory section for mental impairments under Paragraph D of Section 12.00, which covers documentation.  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00D. Section 12.00D(6)(a) states:

> The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the I.Q. scores are considered valid and consistent with developmental history and the degree of functional limitation.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00D(6)(a).

To have a "valid" I.Q., a standardized intelligence test must be used and the results from the standardized test must be accompanied by a narrative report. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00D(6)(e).  A standardized intelligence test is one that is generally accepted in the medical community as a scientifically valid test

in terms of reliability and accuracy, such as the WAIS.  *See, e.g., Popp*, 779 F.2d at 1499 ("The listing further provides that the WAIS test is a well standardized comprehensive intelligence test appropriate to such determination."); 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.00D(5)(c), (6)(e).

Nowhere does the ALJ dispute the validity of Ms. Thompson's I.Q. testing results.  In fact, the ALJ includes "mental deficiency" as one of Ms. Thompson's recognized "severe" impairments.   (Tr. 46); *see Griffin v. Astrue*, No. 5:08cv172-RH/W, 2009 WL 1788185, at *7 (N.D. Fla. June 23, 2009)  ("The ALJ seems to have assumed that the I.Q. scores were valid, having found at step 2 that Plaintiff has the "severe" impairment of mild mental retardation.") (footnote omitted). Moreover, nothing else in the record suggests that Ms. Thompson manipulated her I.Q. testing results.  *See id.* ("Dr. Horvat found that Plaintiff was 'motivated' and 'tried his best.'") (citation omitted).

### 3.      The ALJ has not shown good cause to reject Ms. Thompson's I.Q. score.

Even though the ALJ accepted Ms. Thompson's I.Q. results as valid, this circuit "'has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior.'" *See Alday v. Astrue*, No. 5:08cv217-SPM/WCS, 2009 WL 347722, *3 (N.D. Fla. Feb. 11, 2009) (quoting

11

*Lowery*, 979 F.2d at 837) (citing *Popp*,779 F.2d at 1499).  Additional evidence, such as "medical reports, daily activities, behaviors, and other evidence in the record" may be properly inquired into when the ALJ is evaluating the record for such inconsistencies.  *Alday*, 2009 WL 347722, at *3  (citing *Popp*,779 F.2d at 1499). While the ALJ is not required to unquestionably accept the results of an I.Q. test as reported by an expert, the ALJ "cannot act as both judge and physician."  *See Durham v. Apfel*, 34 F. Supp. 2d 1373, 1380 (N.D. Ga. 1998) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)).   Put differently, substantial evidence must support the ALJ's discounting of an I.Q. score that is favorable to a claimant.

Here, the ALJ found that despite the claimant's valid full scale I.Q. score of 65, the claimant's "level of adaptive functioning is higher than that indicating mental retardation." (Tr. 48).  Relatedly, the ALJ determined that "[t]he evidence fails to show that the claim has a mental impairment to the degree she alleges." (Tr. 51).

The opinion  reached by the ALJ also references the findings of the consulting psychologist, Dr. Crowder.  For example, in finding Ms. Thompson was not mentally retarded under Listing 12.05C, the ALJ stated that "[n]one of [Dr. Crowder's] observations were consistent with more than mild limitation in her ability to relate to others, including supervisors and coworkers."   (*Id.*).

The issue facing this court is whether substantial evidence supports discounting

Ms. Thompson's I.Q. score as inconsistent with other evidence contained in the record. Courts have upheld decisions discrediting I.Q. scores as incredulous. *See, e.g., Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (finding performance I.Q. score of 69 to be inconsistent with claimant who "was close to completing the requirements for a bachelor of science degree and had a history of having taught high school algebra"); *see also Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir.1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of mental retardation based solely upon the results of a standardized intelligence test in its determination of mental retardation").

In support of disbelieving Ms. Thompson's I.Q. score, the ALJ expressly cites to *Popp,* so a closer look at this binding precedent is warranted. (Tr. 47). As the Eleventh Circuit explained in *Popp*:

> The issue to be resolved by this court is whether the ALJ may find the results of an IQ test to be incredible so that Listing 12.05 is not satisfied, and, if such an analysis is permissible, whether the ALJ was justified in disregarding the test results in this case.

> Listing 12.00B4 does not require the Secretary to make a finding of mental retardation based on the results of an IQ test alone. The listing requires the Secretary to take into account the intelligence test *and* the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior. Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact mentally retarded.

13

There is substantial evidence in the record to support the ALJ's finding that Popp is not mentally retarded. <u>First, the ALJ pointed out that Popp was close to completing the requirements for a bachelor of science degree and had a history of having taught high school algebra. Moreover, Popp was not alleged to be failing in his college course studies</u>. The ALJ properly found this to be inconsistent with a finding of mental retardation.

. . .

In summary, the ALJ was not required to find that Popp was mentally retarded based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior. <u>There is substantial evidence in the record to support the ALJ's finding that the results of the IQ test were incredible because they were inconsistent with other evidence and because there was good reason to believe that Popp exaggerated his problems</u>.

*Popp*, 779 F.2d at 1499-1500 (emphasis by underlining added) (internal citation omitted).

A comparison of the facts in *Popp* shows that the present case is clearly distinguished from the former. As Judge Guin of this district observed regarding *Popp*:

The Commissioner's analysis, at least regarding his work history, seems to be inconsistent with *Lowery*, which emphatically states that "an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid." 979 F.2d at 837. The court notes, however, that the *Lowery* court also states that it "has been recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497 (11th Cir.1986)). <u>A review</u>

14

of *Popp*, however, makes clear that the consideration goes to whether the I.Q. score is valid. In *Popp*, the court found the ALJ could properly find the plaintiff's I.Q. score to be "incredible because they were inconsistent with other evidence and because there was good reason to believe that Popp exaggerated his problems." *Popp* 779 F.2d at 1500. Therefore, it seems clear that the ALJ in Popp refused to credit the I.Q. scores. This is not surprising in view of the facts of that case. The plaintiff in *Popp* "held a two-year college associates degree and was enrolled in a third year of college as a history major." *Id.* at 1498. He had worked as an administrative clerk in the Army and after discharge had been employed as a statistical clerk. *Id.* His other jobs included "postal clerk, soil testing technician, cashier, and algebra teacher at a private school for grades ten through twelve." *Id.*

*Cobb v. Barnhart*, 296 F. Supp. 2d 1295, 1298 (N.D. Ala. 2003) (emphasis added).

Here, unlike the plaintiff in *Popp* and as fully acknowledged by the ALJ, Ms. Thompson "went through 12 grades in special education and received a certificate of attendance, rather than a diploma." (Tr. 51 (emphasis added)). Additional test results of Ms. Thompson's showed her reading skills at a fourth grade level and her arithmetic skills at the second grade level. (Tr. 197). Also in sharp contrast to *Popp*, Ms. Thompson has an unskilled labor work history, and she has never held any technical positions. (Tr. 52). "There is no evidence that these jobs [held by Ms. Thompson] are beyond the reach of a mildly retarded individual." *Alday*, 2009 WL 347722, at *7 (citation omitted).

In this instance, the ALJ has failed to give a good reason why Ms. Thompson's I.Q. score should be disbelieved. Even considering the claimant's daily activities and

15

adaptive behaviors, the evidence still fails to provide an adequate basis to support discounting Ms. Thompson's I.Q. scores.  *E.g. Alday*, 2009 WL 347722, at *5 ("The daily activities cited by Defendant [such as "having a boyfriend, sweeping, doing laundry, taking care of a dog, and walking grandchildren to school"] do not constitute substantial evidence in the record to disregard the finding by Dr. Ghostley that Plaintiff is mildly mentally retarded."); *id.* ("That Defendant lives with a boyfriend, R. 278, is not substantial evidence to discount the I.Q. scores."); *Stephens v. Astrue*, No. 1:07cv1001-CSC, 2009 WL 387157, *6 (M.D. Ala. Feb. 13, 2008) ("Thus, the record indicates that Stephens' daily activities and behavior are consistent with those of an individual suffering from mental retardation with a valid full-scale IQ score of 61."); *Durham*, 34 F. Supp. 2d at  1380 (N.D. Ga. 1998) (rejecting ALJ's conclusion that claimant's work as a heavy laborer over the past forty years showed a "long history of adaptive behavior" because "[t]here [wa]s no evidence that these jobs [we]re beyond the reach of a mildly retarded individual").

In sum, substantial evidence does not support the ALJ's attempt to discredit Ms. Thompson's I.Q. score due to her adaptive functioning.  *See Griffin*, 2009 WL 1788185, at *10 ("The ALJ's assumption, that Plaintiff's work history reflects an ability to do his past relevant work in a competitive environment is not supported by substantial evidence in the record and is not an adequate basis to discount his I.Q.

scores."); *id.* ("That he is able to wash dishes, mow the lawn, and take care of his personal hygiene, has been held to be not substantial evidence to discount his I.Q. scores."). Therefore, Ms. Thompson has satisfied the I.Q. requirement of Listing 12.05C.

### B.    The Diagnostic Requirement of Listing 12.05C.

In addition to the I.Q. requirement of Listing 12.05C, a claimant must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05. 20 C.F.R. Part 404, Subpt. P, App. 1, §12.00A (stating that under Listing 12.05, "[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). The introductory paragraph to Listing 12.05 defines mental retardation as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Therefore, a claimant must have manifested 'significantly subaverage general intellectual functioning with deficits in adaptive functioning' prior to the age of 22 in order to meet Listing 12.05C." *Jones,* 494 F. Supp. 2d. at 1287. In the Eleventh

Circuit, a person's I.Q. is presumed to remain constant throughout life, so "[a] valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two." *Jones*, 494 F. Supp. 2d at 1287-88 (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001)).[6] "The requirement that mental retardation or low IQ began prior to age 22 is met when nothing in the record reflects an incident in which claimant suddenly became mentally retarded." *Durnham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (citing *Gant v. Sullivan*, 773 F. Supp. 376, 382 (S.D. Fla. 1991); *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992)).

Against this backdrop, because no evidence of a sudden occurrence resulting in Ms. Thompson's mental deficits exists in the record, she benefits from the rebuttable presumption relating to the diagnostic requirement of Listing 12.05C. Relatedly, nothing in the ALJ's decision attempts to explain why she is not entitled to the benefit of this rebuttable presumption relating to the diagnostic definition of Listing 12.05C.[7] Moreover, to the extent that the ALJ relies upon Ms. Thompson's

---

[6] In *Hodges*, the court formally recognized the presumption that "[w]hen a claimant presents a valid I.Q. score meeting the [§ 12.05] Listing criteria, the claimant is presumptively disabled under the Listing if the other requirements of the Listing have been met." *Jones v. Astrue*, 494 F. Supp. 2d at 1288 (citing *Hodges*, 276 F.3d at 1269). Before *Hodges*, the presumption had not been formally recognized, but this circuit had implicitly embraced it in *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). *See Hodges*, 276 F.3d at 1269.

[7] Indeed, the court does not even see where the ALJ even mentions the rebuttable presumption in his decision.

18

adaptive functioning in an effort to show she does not meet the diagnostic criteria, that analysis fails to meet the substantial evidence standard for the same reasons that it provided an insufficient basis for discounting her I.Q. score.

Relatedly, this court finds this case to be much closer to *Cobb*, than *Popp*:

> In the present case, the Commissioner concedes the plaintiff's I.Q. scores are valid. There is not substantial evidence in the record to support a finding that the plaintiff's daily activities or prior jobs are inconsistent with the descriptive definition of mental retardation contained in Listing 12.05. His prior relevant work, as described by the ALJ, was as "a cement finisher, a car wash detailer, and a street sweeper." [R 15] The vocational expert testified that the job plaintiff described as a "cement finisher," was "more of a helper and laborer," and was essentially heavy unskilled work. [R 52] There is nothing in the plaintiff's report of his daily activities suggesting he does not meet the descriptive definition of mental retardation. The Commissioner found the plaintiff has "chronic low back pain, mild mental retardation, depression and bilateral cataracts, . . . impairments which cause significant vocationally relevant limitations." [R 17] Therefore, based upon the findings of the ALJ and the concessions of the Commissioner in brief, the plaintiff has met all the requirements of Listing 12.05C. He is, therefore, disabled within the meaning of the Social Security Act. An appropriate order will be entered contemporaneously herewith.

*Cobb*, 296 F. Supp. 2d at 1298 (emphasis added).   Similarly, Ms. Thompson has satisfied all the requirements relating to the first prong of Listing 12.05C.

**II.**   **The Second Prong of Listing 12.05C**

    **A.**   **The ALJ's error in not reaching the second prong of Listing 12.05C by improperly discounting Ms. Thompson's I.Q. score and/or incorrectly determining her inability to satisfy the diagnostic description under the first prong does not require remand for further consideration because the ALJ sufficiently developed the record to show that the second prong of Listing 12.05C is satisfied.**

The ALJ did not explicitly reach the second part of Listing 12.05C, which analyzes whether the claimant has "a physical or other mental impairment imposing additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  In light of this court's finding that the first prong of Listing 12.05C of a valid I.Q. score of 60 through 70 has been satisfied, it was  error for the ALJ not to continue to the second prong of whether the combination of Ms. Thompson's other impairments imposed "significant" limitations on her functional abilities.

"[A] 'work-related limitation of function' must be 'significant,' but it need not be a 'severe impairment' as defined at Step 2[.]"  *Griffin*, 2009 WL 1788185, at *10 (quoting *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985)). Relatedly, an impairment satisfying the second prong of Listing 12.05C is not required, in itself, to be disabling.  *Edwards*, 755 F.2d at 1515 (citation omitted).  "An impairment imposes significant limitations when its effect on a claimant's ability to

20

perform 'basic work activities' is more than slight or minimal. *Id.*

Now the court must look to see whether the ALJ determined within the record if the claimant's other impairments (*i.e.*, beyond her mental retardation) impose additional and significant work-related limitations. *See Edwards*, 755 F.2d at 1515 ("The question remains whether his asthma or chronic obstructive lung disease imposes an 'additional and significant work-related limitation of function.'"); *cf. Cobb v. Barnhart*, 296 F. Supp. 2d at 1298 ("The Commissioner found the plaintiff has 'chronic low back pain, mild mental retardation, depression and bilateral cataracts, . . . impairments which cause significant vocationally relevant limitations.'") (citation omitted).

Here, while the ALJ found the medical evidence on the record satisfied the second step and determined the claimant's impairments were "severe," his conclusions at step two considered the claimant's mental retardation in combination with her other mental and physical impairments. (Tr. 46). However, the ALJ's finding at step four of limitations on the claimant's residual functional capacity is sufficient to demonstrate a "significant work-related limitation of functioning." *See, e.g., Edwards*, 755 F.2d at 1516 ( "Because Edwards's asthma and lung disease affect his ability to exert himself, they have more than a "minimal effect" on his ability to perfect basic work activities.").

21

More specifically, the ALJ found that "[b]ecause of her alleged medication side effects, asthma and her left hand limitations, she can never climb ladders, ropes, scaffolds; she cannot work around dangerous machinery." (Tr. 50). The ALJ also noted that Ms. Thompson "is limited to frequent fine fingering, and occasional use of the left upper extremity." (*Id.*). The ALJ additionally concluded that "[b]ecause of her headaches and asthma, she should avoid work environments with poor ventilation, extremes of heat and cold, excessive noise, vibration, and extreme wetness and humidity[.]" (Tr. 50). These findings substantiate that the ALJ determined that Ms. Thompson's asthma, migraine headaches, and carpal tunnel syndrome effect her ability to exert herself, so they have more than a "minimal effect" on her ability to perform basic work activities. Accordingly, the record shows that the claimant meets the second requirement under Listing 12.05C.

## CONCLUSION

The ALJ correctly found the claimant satisfied steps one and two of the five-step sequential evaluation process. Under step three, the ALJ's decision that Ms. Thompson does not meet Listing 12.05C is not supported by substantial evidence. In particular, under step three, the ALJ failed to give good cause for discounting of the claimant's I.Q. or otherwise excluding her from coverage under Listing 12.05C. Instead, the sequential five step analysis should have ended at step three with finding

Ms. Thompson disabled under Listing 12.05C, rather than continuing to step four.

A remand for further evidentiary proceedings is unnecessary in this instance because the record has been adequately developed and there is ample evidence of a disability. *See Alday*, 2009 WL 347722, at *8 (indicating that "[r]eversal is warranted where the record is fully developed and, upon the application of the correct legal standards, the claimant is entitled to benefits") (citations omitted). The court therefore remands with an order to enter benefits because, although the ALJ did not expressly apply the second prong, the findings made by the ALJ and adopted by the Commissioner have already addressed and resolved that Ms. Thompson has additional significant impairments beyond her reduced mental capacity that satisfy the second prong of Listing 12.05C.

Therefore, this court reverses the ALJ's finding that Ms. Thompson was not disabled within the meaning of the Social Security Act under Listing 12.05C, and remands with direction to award benefits because the record shows that Ms. Thompson has met all the applicable requirements. A separate order will be entered.

**DONE** and **ORDERED** this the 9th day of November, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge